IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| **STEPHEN M. CAMPBELL,** <br> 1105 Grove Road <br> West Chester, PA, 19380 <br><br> Plaintiff, <br> v. <br><br> **EAST BALTIMORE DEVELOPMENT, INC.,** <br> 1704 East Chase Street <br> Baltimore, MD  21213 <br><br>   Serve:  Resident Agent <br>         Michael A. Brown, Esq. <br>         Miles & Stockbridge, P.C. <br>         100 Light Street <br>         Baltimore, MD  21202 <br><br>         Defendant. <br><br> **INTERNAL REVENUE SERVICE,** <br> c/o John Koskinen, <br> IRS Commissioner <br> 1500 Pennsylvania Avenue, N.W. <br> Washington, D.C.  20009 <br>   <u>Statutory</u> <u>Notification</u>: <br>   26 U.S.C. §7434(d) <br><br>         Non-Party. | **CIVIL ACTION FILE NO.** <br> (Jury Trial Demanded) |

## **COMPLAINT**

Plaintiff, Stephen M. Campbell ("Mr. Campbell" or "Plaintiff"), by and through his undersigned counsel, hereby brings this Complaint against East Baltimore Development, Inc. ("Defendant"), by averring as follows:

1

## INTRODUCTION

1. The present lawsuit is a make-whole action to recover wages and benefits rightfully owed to Mr. Campbell stemming from a purposeful, willful and fraudulent worker misclassification scheme perpetrated against him by his employer whereby he was forced for years to be classified as an independent contractor under threat of discharge when he was, in fact, at all times as employee.

2. As a result of a demand for determination of worker status filed with the Internal Revenue Service ("IRS"), the Defendant was effectively forced to concede to the IRS the fraudulent misclassification and agreed to reclassify Mr. Campbell's status as that of an "employee" in or around November of 2015. The reclassification was made *ex post facto* insofar as Defendant had already terminated Mr. Campbell months earlier.

3. While the Defendant has since agreed to participate in the IRS' Voluntary Classification Settlement Program in order to make certain remedial payments or penalties to the IRS stemming from its scheme, the Defendant has yet to account for the economic damages caused directly to Mr. Campbell and his family as a result of its conduct, which includes but is not limited to loss of participation in certain qualifying welfare benefits such as health, dental and vision; years of lost vacation and sick pay; additional tax burdens and other lost wages. The case, therefore, involves claims for violation of: 26 U.S.C. § 7434 of the Internal Revenue Code; the Employee Retirement and Income Security Act ("ERISA"); the Fair Labor Standard Act ("FLSA"); the Maryland Wage Payment and Collection Laws, MD. CODE ANN., LAB. & EMPL. §§3-501, *et seq*. ("MWPCL"); common law claims for fraudulent or negligent misrepresentation, and *quantum meruit*.

4. Consistent with the allegations herein, Mr. Campbell additionally seeks enhanced damages, pre and post-judgment interest, reasonable attorneys fees and costs, as well as all other relief as these causes and the law may permit.

5. These claims and the facts which support them are referred to individually or, at times, collectively as the "Lawsuit."

## PARTIES

6. Mr. Campbell is an adult resident of the State of Pennsylvania, whose current address is 1105 Grove Road, West Chester, PA, 19380. At all relevant times, Mr. Campbell was an "employee" within the meaning of the statutes invoked in this Lawsuit.

7. Defendant East Baltimore Development, Inc. ("EBDI"), holds itself out as a tax exempt Maryland nonstock corporation first organized under the laws of the State of Maryland on September 5, 2002 with its current principal place of business at 1704 East Chase Street, Baltimore, Maryland 21213. The Maryland State Department of Assessments and Taxation ("SDAT") presently indicates that EBDI is an active entity, and it is therefore subject to the personal jurisdiction of this Court. At all times relevant to this Lawsuit, EBDI was an "employer" within the meaning of the statutes invoked in this Lawsuit.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this Lawsuit pursuant to 28 U.S.C. §1331, as this action invokes federal question under several federal statutes. This Court additionally has diversity jurisdiction pursuant to 28 U.S.C. §1332. The Maryland statutory and common law claims set forth herein are so related and intertwined with the federal claims so as to form a part of the same case and controversy and vests this Court with supplemental jurisdiction over these claims pursuant to 28 U.S.C. §1367(a).

9. Mr. Campbell has signed a consent form to join and/or institute this Lawsuit and assert wage claims arising herein, which is attached hereto as Exhibit. A.

10. Venue is proper in the Baltimore Division of the United States District Court for the District of Maryland under 28 U.S.C. §1391(b)(2), as a substantial part of the events giving rise to this Lawsuit occurred in this District, and because EBDI conducts business and is located in this District.

**FACTS**

11. On or around January of 2010, Mr. Campbell began his employment with EBDI as a Senior Level Engineer. Within a matter of months, he quickly advanced and assumed the role of Director of Engineering & Construction in the Real Estate Division. At all times, Mr. Campbell worked in a full-time position requiring the performance of at least 40 hours of work per week.

12. As a full-time employee, Mr. Campbell was eligible to participate in several EBDI benefit programs, including health care coverage, a dental and vision plan, life insurance, short and long term disability benefits, and the right to participate in EBDI's 401(k) retirement plan with matching contributions.

13. As a full time employee, Mr. Campbell was also entitled to 15 days of annual leave (*i.e.*, vacation) each year accruing at 4.62 hours per pay period, as well as 10 days of annual sick leave, accruing at 3.08 hours per pay period. Mr. Campbell was also entitled to take advantage of other paid leave afforded full time employees, including but not limited to holiday leave.

14. In his capacity of Director of Engineering and Construction, Mr. Campbell's responsibilities included, but were not limited to, coordinating with design engineering firms to

review design plans for various contracts; to ensure all approvals and permitting were obtained by appropriate reviewing agencies; preparing and reviewing proposals for new projects, and making recommendations to the CEO. Mr. Campbell was also tasked with review and approval and review of invoices from outside engineering firms, tracking budgets and schedules for construction contracts and the like. Mr. Campbell also routinely coordinated and ran monthly meetings within the community during demolition projects, and fielded questions and concerns from residents relating to ongoing constructions projects.

15. Although EBDI's stated charter is to promote "charitable, educational and scientific purposes" in connection the comprehensive redevelopment plan in the residential and business communities of East Baltimore, it nevertheless conducts business at times as if it were a for-profit entity.

16. In the late summer and early fall of 2012, Mr. Campbell was repeatedly approached by Christopher Shea ("Mr. Shea"), who at the time served as CEO of EBDI, regarding the need to have Mr. Campbell convert from an employee to an independent contractor. In time, the discussions were not presented as a request, but rather as an ultimatum, and it was made clear to Mr. Campbell that he would be discharged if he did not acquiesce to this arrangement.

17. As a result, on or about November 29, 2012, Mr. Campbell signed a "Contract Agreement" with EBDI which provided, in part, that he was being engaged as "an independent contractor."

18. The Contract Agreement also provided that Mr. Campbell "shall not be entitled to nor receive any benefit normally provided to the Company's employees such as, but not limited to, vacation payment, retirement, health care or sick pay."

19. Although Mr. Campbell was internally labeled as a consultant, he was still required to perform essentially the exact same duties as before, and, in fact, continued in his position of Director of Engineering & Construction for EBDI.

20. In his position of Director of Engineering and Construction, Mr. Campbell earned the sum of $120 dollars per hour.

21. As part of his conversion to independent contractor in or around the beginning of December of 2012, EBDI directed that submit invoices which averaged about 32 hours per week so as to approximate the total contract value as stated on the Contract Agreement.

22. Mr. Campbell continued to work on behalf of EBDI as an independent contractor from December of 2012, and throughout 2013, 2014 and part of 2015. And throughout this time frame, Mr. Campbell continued to perform the duties of Director of Engineering and Construction.

23. On or about January 12, 2015, Raymond Skinner ("Mr. Skinner") was appointed CEO of EBDI and replaced Mr. Shea.

24. Mr. Campbell hoped the appointment of a new chief would present an opportunity to address the fraudulent misclassification that had been perpetuated against him over the past three years at EBDI.

25. To this end, in mid-January of 2015, Mr. Campbell had an initial introductory meeting with Mr. Skinner, whom also seem perplexed as to the contractual arrangements that predated his arrival. Mr. Campbell explained that he was really an employee who was misclassified and requested that he be reinstated as such, whether in his current role as Director of Engineering and Construction, or in another open position, such as Residential Development Coordinator.

26. Instead of EBDI acknowledging and curing the ongoing misclassification, Mr. Campbell instead received an email from EBDI's CFO , Jolly Burks ("Ms. Burks") on or about January 23, 2015 stating that his email account and title of Director of Engineering and Construction would be taken away so as to give more of an appearance that he was a contractor and not an employee. In other words, instead of remediating the issue, EBDI sought to further cover-up the misclassification.

27. Less than one week later, on January 29, 2015, Mr. Campbell received an email directly from Mr. Skinner that "effective February 9th 2015 you should bill EBDI for no more than 20 hours per week at the same hourly rate…."

28. On March 18, 2015, Mr. Campbell was given notice of termination.

29. Mr. Campbell's last day of employment was June 12, 2015.

30. From December 1, 2012 through his final day at EBDI, Mr. Campbell was not afforded full payment for work performed on behalf of EBDI; was not permitted to participate in EBDI's welfare benefit and ERISA plans; and was not able to take advantage of paid vacation, sick or holiday pay, among other benefits. Further, at the time of his termination, Mr. Campbell was not able to take advantage of COBRA continuation options, insofar as he was not a health care plan participant.

31. In addition to the loss of benefits, Mr. Campbell was also forced to incur the costs of forming and maintaining a corporate entity through which he would hold himself out as an independent contractor, and suffered (and continues to suffer), negative tax implications and other administrative costs which reasonably flow from the misclassification that would have never arisen if he had been properly classified as an employee throughout his affiliation with EBDI.

32. EBDI, as an employer doing business in the State of Maryland, was required to have workers' compensation and unemployment insurance covering Mr. Campbell throughout his employment in the event of injury or discharge, as the case may be.

33. Following his discharge, Mr. Campbell applied for unemployment compensation benefits through the Maryland Department of Labor, Licensing and Regulation ("DLLR"). Given the representations made by EBDI to the DLLR that he was not an employee, however, Mr. Campbell was not afforded any unemployment benefits.

34. On or about October 10, 2015, Mr. Campbell notified the IRS of the past misclassification by EBDI and demanded a determination of worker status.

35. As a result of this filing, EBDI consulted its counsel and was effectively forced to admit its fraudulent misclassification and informed the IRS it agreed to reclassify Mr. Campbell's status as that of an "employee." EBDI's actions in this regard are an admission against interest.

36. On November 27, 2015, Mr. Campbell received notification from the IRS that EBDI would be reclassifying him as an employee.

37. Despite the pledge to reclassify, EBDI has not made Mr. Campbell whole or remedied the lost wages, benefits, lost unemployment and other harm as alleged herein – thus necessitating this Lawsuit.

## COUNT ONE
## VIOLATION OF INTERNAL REVENUE CODE
(26 U.S.C. §7434)

38. Mr. Campbell incorporates by reference all allegations contained in all paragraphs of the Complaint as if more fully set forth herein.

39. EBDI's scheme to willfully misclassify Mr. Campbell as an independent contractor when he was, in fact, an employee resulted in EBDI failing to timely pay proper FICA taxes on Mr. Campbells' behalf as required by the IRS during the course of his employment, and otherwise resulted in the wrongful issuance of a year-end 1099 as opposed to a wage and income statement for the years 2012, 2013, 2014 and 2015.

40. EBDI willfully filed fraudulent information returns with the IRS for the years 2012, 2013, 2014 and 2015, in violation of 26 U.S.C. § 7434.

41. Under the Internal Revenue Code, 26 U.S.C. § 7434(a), "[if] any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."

## COUNT TWO
## FAIR LABOR STANDARDS ACT
(FLSA Retaliation)

42. Mr. Campbell incorporates by reference all allegations contained in all paragraphs of the Complaint as if more fully set forth herein.

43. At all times relevant to this Lawsuit, EBDI was an "employer" and Mr. Campbell was an "employee" within the meaning of the FLSA.

44. In or around January of 2015, Mr. Campbell engaged in protected activity by informing the new incoming CEO, Mr. Skinner, that he had been misclassified for years and requested reinstated or re-classification as an EBDI employee whether in his current position or in another open position at EBDI.

45. As a direct and proximate result of these complaints, approximately one week later EBDI took adverse employment action against him by unilaterally reducing his hours from

about 32 per week to just 20 hours per week, thus causing him significant economic harm. Subsequently, on or about March 18, 2015, EBDI notified Mr. Campbell that he was being terminated, another adverse employment action.

46. EBDI's actions were in willful disregard for the rights of Mr. Campbell under the FLSA, both in terms of his illegal misclassification and subsequent retaliation in violation of 29 U.S.C. §215(a)(3). EBDI's conduct was not the result of a good faith or bona fide dispute.

47. From Mr. Campbell's last day of employment on or about June 12, 2015 to the present, Mr. Campbell has suffered a loss of wages as a result of EBDI's illegal activities, and Mr. Campbell is owed the value of his lost wages (or, alternatively unpaid minimum wages) in an amount consistent the FLSA and the allegations herein.

48. In addition to any judgment awarded, Mr. Campbell is entitled to an award of liquidated damages equal to the amount of damages, in addition to pre and post-judgment interest, costs of the action, and reasonable prevailing party attorney's fees as authorized by 29 U.S.C. §216(b).

## COUNT THREE
## EMPLOYMENT RETIREMENT INCOME SECURITY ACT
(ERISA, 29 U.S.C. § 1001, *et seq*)

49. Mr. Campbell incorporates by reference all allegations contained in all paragraphs of the Complaint as if more fully set forth herein.

50. At all relevant times to this Lawsuit, Mr. Campbell was an "employee" within the meaning of ERISA or should have been classified as such. 29 U.S.C. §1002(6).

51. At all relevant times, EBDI maintained several defined contribution plans or defined benefit plans within the meaning of ERISA, including but not limited plans covering health care; dental; vision; retirement; insurance and disability for eligible employees and/or

participants (collectively the "Plans"). EBDI was either the "Sponsor" or "Administrator" of such Plans within the meaning of ERISA, and, as such, owed fiduciary duties to beneficiaries and participants in the Plan. 29 U.S.C. §1002(16).

52. Until recently, EBDI has taken the position that Mr. Campbell was not entitled to any ERISA benefits based on the fact that they willfully and fraudulently classified him as an independent contractor. However, insofar as Mr. Campbell was, in fact, a proper employee at all times in this Lawsuit, he was eligible to participate in such Plans, or in the alternative, should have had a reasonable expectation of being a participant in such Plans and otherwise has or had a colorable claim to rights expressed in such Plans.

53. Section 502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)) authorizes a civil action to be brought by a participant in order for that participant to clarify his right to ERISA benefits for whatever plan he was eligible or should have been eligible.

54. Defendant violated ERISA by denying Mr. Campbell the right to participate and benefit in such Plans. As a direct and proximate result of the misclassification and denial of access to such Plans, Mr. Campbell has been harmed and suffered damages. Defendant's actions are willful and outrageous, illustrating a complete disregard for the rights of Mr. Campbell.

55. Administrative remedies have been unavailable to Mr. Campbell because he was wrongfully classified as an independent contractor and has since been terminated, making the possible exhaustion of administrative remedies futile.

56. In addition to any judgment and statutory penalties awarded, Mr. Campbell is entitled to pre and post-judgment interest, costs of the action, and reasonable prevailing party attorney's fees as authorized by 29 U.S.C. §1132(g)(1).

# COUNT FOUR
# MARYLAND WAGE PAYMENT AND COLLECTION LAW
(Unpaid Hourly Wages)

57. Mr. Campbell incorporates by reference all allegations contained in all paragraphs of the Complaint as if more fully set forth herein.

58. At all times relevant to this Lawsuit, EBDI was an "employer" and Mr. Campbell was an "employee" within the meaning of the Maryland Wage Payment and Collection Laws, MD. CODE ANN., LAB. & EMPL. §§3-501, *et seq*. ("MWPCL").

59. As of December of 2012, Mr. Campbell's hourly rate of pay for his full time position of Director of Engineering & Construction was $120 dollars per hour, in accordance with a written contract issued to Mr. Campbell for a length of six months that was thereafter extended for years by operation of the parties.

60. To meet the written contract value floor under the written contract, Mr. Campbell was instructed and permitted to work approximately 32 hours per week from December of 2012 through February of 2015. However, effective February 9, 2015, EBDI unilaterally reduced Mr. Campbell's working hours from approximately 32 hours to 20 hours per week, thereby causing economic losses of approximately 12 hours per week from February 9, 2015 through his last day of employment on or about June 12, 2015.

61. Defendant violated the MWPLC by failing to pay all hourly wages for which it was required to compensate Mr. Campbell, and is therefore liable for the amount of these unpaid hourly wages. MD. CODE ANN., LAB. & EMPL. §3-505.

62. Defendant willfully violated the MWPCL. The refusal and failure to pay all such unpaid hourly wages was not the result of a bona fide dispute, and Mr. Campbell is entitled to treble damages in an amount not exceeding three times the unpaid bonus, as well as pre and post

judgment interest, reasonable attorney's fees and other costs. MD. CODE ANN., LAB. & EMPL. §3-507.2(b).

## COUNT FIVE
## MARYLAND WAGE PAYMENT AND COLLECTION LAW
(Other Unpaid "Wages")

63. Mr. Campbell incorporates by reference all allegations contained in all paragraphs of the Complaint as if more fully set forth herein.

64. At all times relevant to this Lawsuit, EBDI was an "employer" and Mr. Campbell was an "employee" within the meaning of the Maryland Wage Payment and Collection Laws, MD. CODE ANN., LAB. & EMPL. §§3-501, *et seq*. ("MWPCL").

65. Under MWPCL, once a fringe benefit or other item of remuneration has been promised as part of compensation for service, the employee is entitled to enforce the payment as wages. The MWPLC specifically includes "fringe benefit" and "any other remuneration promised for service" in its definition of "wages." MD. CODE ANN., LAB. & EMPL. § 3-501(c)(i)-(v).

66. Immediately prior to his fraudulent misclassification, Mr. Campbell, as an employee, was entitled to accrue 15 days of paid annual leave (*i.e.*, vacation) each year accruing at 4.62 hours per pay period. Had he not been willfully misclassified, Mr. Campbell would have continued earning paid annual leave as do other employees at EBDI. Hence, Defendant violated the MWPLC by failing to pay the value of his annual leave, and is liable for the amount of this unpaid fringe benefit or other remuneration for the time period reaching back three years prior to the initiation of this Lawsuit through his last day of employment.

67. Similarly, prior to his fraudulent misclassification, Mr. Campbell, as an employee, was entitled to accrue 10 days of paid sick leave each year accruing at 3.08 hours per pay period.

13

Had he not been willfully misclassified, Mr. Campbell would have continued earning paid sick leave as do other employees at EBDI. Hence, Defendant violated the MWPLC by failing to pay the value of his sick leave, and is liable for the amount of this unpaid fringe benefit or other remuneration for the time period reaching back three years prior to the initiation of this Lawsuit through his last day of employment.

68. Additionally, prior to his fraudulent misclassification, Mr. Campbell, as an employee, was entitled to approximately 8 or more days of paid holiday leave each year. Had he not been willfully misclassified, Mr. Campbell would have continued earning paid holiday leave as do other employees at EBDI. Hence, Defendant violated the MWPLC by failing to pay the value of his holiday leave, and is liable for the amount of this unpaid fringe benefit or other remuneration for the time period reaching back three years prior to the initiation of this Lawsuit through his last day of employment.

69. Defendant willfully violated the MWPCL. The refusal and failure to pay all such unpaid "wages" was not the result of a bona fide dispute, and Mr. Campbell is entitled to treble damages in an amount not exceeding three times the unpaid bonus, as well as pre and post judgment interest, reasonable attorney's fees and other costs. MD. CODE ANN., LAB. & EMPL. §3-507.2(b).

## COUNT SIX
## FRAUDULENT MISREPRESENTATION
(Common Law)

70. Mr. Campbell incorporates by reference all allegations contained in all paragraphs of the Complaint as if more fully set forth herein.

71. After nearly three years of gainful employment with EBDI as an employee, EBDI took fraudulent and affirmative acts to illegally convert Mr. Campbell from an employee to an

14

independent contractor, and made a series of false and affirmative representations and actions whereby EBDI suggested that it was proper, necessary and legal for Mr. Campbell to serve in the role of independent contractor under threat of discharge.

72. In fact, EBDI known or should have known at all times that the independent contractor classification was illegal, and that Mr. Campbell was entitled to the benefits and protections of all laws enacted for employees. On this basis, Mr. Campbell asserts that he was intentionally misled, or that EBDI knew that their actions were false at the time they were made, or were made with reckless indifference to the truth. Said actions were taken with the intent to deceive and defraud Mr. Campbell.

73. Said action and false representations were made with actual malice, evil motive, ill will, fraud and intent to injure.

74. Mr. Campbell actually and justifiably relied on said false representations by agreeing to work as an independent contractor and was damaged as a direct and proximate result in many forms, including but not limited to: depriving him of participating in EBDI's various benefit and contribution plans, depriving him of other employee benefits to which he would have accrued and enjoyed as an employee of EBDI, depriving him of unemployment benefits following his illegal discharge; and otherwise requiring him to assume responsibility for all of his own employment related expenses which should have been borne by EBDI, and other damages as will be shown at trial.

## COUNT SEVEN
## NEGLIGENT MISREPRESENTATION
(Common Law)

75. Mr. Campbell incorporates by reference all allegations contained in all paragraphs of the Complaint as if more fully set forth herein.

76. After nearly three years of gainful employment with EBDI as an employee, EBDI negligently converted Mr. Campbell from an employee to an independent contractor, and made a series of negligent and affirmative representations and actions whereby EBDI suggested that it was proper, necessary and legal for Mr. Campbell to serve in the role of independent contractor under threat of discharge.

77. In fact, EBDI known or should have known at all times that the independent contractor classification was illegal, and that Mr. Campbell was entitled to the benefits and protections of all laws enacted for employees. On this basis, Mr. Campbell asserts that he was negligently misled, or that EBDI knew that their actions were negligent at the time they were made, or were made with reckless indifference to the truth.

78. Said action and negative and false representations were made without regard for the truth of said representations.

79. Mr. Campbell actually and justifiably relied on said negligent and false representations by agreeing to work as an independent contractor and was damaged as a direct and proximate result in many forms, including but not limited to: depriving him of participating in EBDI's various benefit and contribution plans, depriving him of other employee benefits to which he would have accrued and enjoyed as an employee of EBDI, depriving him of unemployment benefits following his illegal discharge; and otherwise requiring him to assume responsibility for all of his own employment related expenses which should have been borne by EBDI, and other damages as will be shown at trial.

**COUNT EIGHT**
**QUANTUM MERUIT**
(Common Law)

80. Mr. Campbell incorporates by reference all allegations contained in all paragraphs

of the Complaint as if more fully set forth herein.

81. Defendant had a contractual or alternatively an equitable quasi-contractual obligation to compensate Mr. Campbell with the value of all benefits, contributions, annual and sick leave, unemployment that were due to him as an employee of EBDI as a result of his employment, and Mr. Campbell conferred benefits upon EBDI by working on its behalf.

82. EBDI had an appreciation or knowledge of the benefits being conferred upon them by Mr. Campbell.

83. Despite the foregoing, EBDI retained the value of the benefits, contributions, annual and sick leave under circumstances that make it inequitable for EBDI to retain the value of these benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Campbell requests judgment against EBDI on all causes of action and seeks the following:

    A.    For violations 26 U.S.C. §7434(b): the amount of $5,000 dollars for each violation during the years 2012, 2013, 2014, or 2015; or the actual damages sustained by Mr. Campbell as the proximate result of the filing of the fraudulent returns, whichever is greater in accordance the statute;

    B.    For violations of the FLSA: reinstatement; partial lost wages from February 9, 2015 through June 12, 2015; back pay from June 12, 2015 to the present; front pay; and liquidated damages;

    C.    For violations of ERISA: the value of all lost benefits to which Mr. Campbell was eligible to participate as the evidence will support; and all other statutory penalties relief available;

D. For violations of the MWPCL: the value of all unpaid "wages" as defined by the MWPCL for the period of three years preceding the filing of this Lawsuit to the present as the evidence will support; and treble damages under equal to three times the value of unpaid wages as the evidence will support;

E. For fraudulent and negligent misrepresentation: the value of all lost employment benefits to which Mr. Campbell was eligible to participate as the evidence will support; the value of all tax and other contributions to which Mr. Campbell would have received as an employee as a result of misclassification; all other costs attendant with requiring Mr. Campbell the responsibility of operating as an independent contractor and all employment related expenses which should have been borne by EBDI; the value of unemployment benefits which were denied as a result of EBDI's actions; compensatory and punitive damages;

F. For *quantum meruit*: the value of all lost employment benefits to which Mr. Campbell was eligible to participate as the evidence will support;

G. Reasonable attorney's fees and costs as the nature of his various statutory causes will permit;

H. Pre and post-judgment interest;

I. A judicial determination that EBDI violated the statutory and common law causes asserted in the Lawsuit;

J. Any and all other penalties and monetary, declaratory, and other equitable relief as the nature of his causes may require or permit and which this Court finds appropriate under the circumstances.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury in this action.

PLAINTIFF STEPHEN CAMPBELL

By: _____/s/_____
Ruth Ann Azeredo (MD 16175)
Law Office of Ruth Ann Azeredo LLC
1997 Annapolis Exchange Parkway
Suite 300
Annapolis, Maryland 21401
Tel: (410) 558-1915
Fax: (410) 558-1917
ruthazeredo@comcast.net

AND

Timothy W. Romberger
Fed. Bar No. 014408
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20046
(202) 248-5053
timromberger1@comcast.net

Date: June 19, 2017